Good morning, Your Honor. Muhammad Hammoudi, on behalf of the petitioner, Mr. Jeffrey Kinzle, I'd like to reserve three minutes of my time for rebuttal. May it please the court and opposing counsel. Trial counsel was ineffective in this case for failing to consider, investigate and evaluate Mr. Kinzle's mental illness during the plea process. And the commissioner's decision in our view was contrary to Lafler because the commissioner applied an objective standard placed a higher burden on Mr. Kinzle to establish prejudice than was required under Lafler and required him to prove that no one in a reasonable state of mind would have rejected the offer. In this case, we had a significantly amount more information and a record to establish prejudice independent of Mr. Kinzle's declaration. We had the declaration of Dr. Alan Breen providing an assessment of Mr. Kinzle, corroborating Mr. Kinzle's declaration and his current treatment showing that what he should have received as to medication. We also had disparity in sentence, which is an external factor that the Lafler court looked to. And here he received a 129 month approximate difference in sentence with the sentence that was imposed consecutively. He was open to pleading guilty, even though he was insisting on going to trial. And on more than one occasion, he made representations that he wanted to plead guilty to a sex offense, which would have also exposed him to the same indeterminate sentencing review board. He expressed remorse at his indecent liberties trial at sentencing, which is also another indication that the Lafler court looked to. There was no indication in this trial. What that your, that your client was, was suffering from a mental disability. So I understand there was, there was a competency hearing, right? There was a competency determination. There, there was not a competency determination, your honor, at the trial level, there was a competency claim raised with the court of appeals on direct appeal. Okay. And so there was no competency determination. And how did the court of appeals resolve that? The court of appeals resolved that against Mr. Kinzel. Are you're not, and you're not, you're not contesting that, that conclusion, are you? No, we are not contesting. So counsel, I've, I've read the, I've read the transcripts. And one thing that struck me about, um, the colloquy between your client and, uh, the court and counsel, your client was very articulate. Now, I don't, I don't have the benefit of having, of having heard him. So I haven't The words on the page are, uh, substantial. There's a large vocabulary. He understands, uh, various, uh, there are various terms of art, uh, that he uses there. And he seems to be very clear that he wishes to go to trial, that he wants a fair trial and therefore he's not willing to do that. So what are we supposed to do with that? I mean, if, if I can't see anything on the page, what, what, what, what more was, was trial counsel supposed to get that he was actually suffering a mental breakdown and was not, although he was competent to stand trial, that, um, that somehow, uh, he was not getting the medical attention that he needed. Well, I think your honor, that the challenge with that is, is that, is that show that is the showing on, this is the position that, that I think that the commissioner, that this showing of prejudice is tenuous. I think that, that saying that the showing on prejudice is tenuous because of how Mr. Kinzel is speaking to the judge during these colloquies while refusing to answer the fundamental question, which every court has refused to answer to date is whether trial counsel was ineffective for failing to consider his mental health, which was manifesting itself, which was manifest. I'm sorry, your honor. No, I didn't mean to interrupt. Go ahead. Finish it. Which was met, which was manifesting itself in, in a variety of ways to her. There was a conflict between trial counsel and, and Mr. Kinzel. He threatened to harm her and her misunderstanding of that mental health issue is, is clearly apparent when, when trial counsel thought about shackling Mr. Kinzel. That showed that counsel did not have an understanding of Mr. Kinzel's mental illness and how mental illness manifests itself is unique. And that is, that is also another fundamental problem with the analysis, applying this objective standard in a setting where Mr. Kinzel is talking to the court and, and, and expressing himself to the court. He's in a public setting. This is an open court and he's talking to the judge. And what I can tell the court is, is that once he took it upon himself at sentencing to write a detailed letter to judge Bowdoin talking about his mental health issues, judge Bowdoin acknowledged them at that sentencing. And it was trial counsel's responsibility to get involved early enough to investigate, collect records and get an understanding as to why it was that there was no trust between her and Mr. Kinzel. She said to the court, and this is at ER 52, I don't think he trusts anything I say. And there was a breakdown in communication. And what I would say is, is that if Mr. Kinzel's claim was predicated on a hearing disability or a sight disability, as opposed to a mental health disability, it is counsel's responsibility to make sure that their client hears and sees critical aspects of their case so that they're able to make an informed judgment about them. And, and when you're talking about a plea versus going to trial and you want the individual to understand the evidence that is against you and what it means to go to trial and what are the consequences, contrasting that with accepting responsibility and expressing remorse and understanding that the ISRB is predicated on an individual accepting responsibility for their conduct. And then, and then the plea offer was, was based in part to allowing trial counsel, not Mr. Kinzel, to get in front of the ISRB soon enough so that he was able to make a pitch to them that I am worthy of reintegration into the community. I have done what is... Your argument on prong one, Strickland. I just want to make sure that my understanding is correct, that the state court didn't make a prong one finding. It relied on prong two. Is that right? That's right, Your Honor. Okay. So what's your best... If I give you prong one for purposes of this argument, I want to make sure, and I'm clear on that point, that if hypothetically, if I agree with you that there's a deficient performance in prong one, what's your best prong two argument, please? My best prong two argument is this, Your Honor. I look to Lafler's prejudice articulation, and it says that in these circumstances, the defendant must show that but for ineffective advice of counsel, there's a reasonable probability that the plea offer would have been presented to the court, that the defendant would have accepted the plea, and the prosecution would not have withdrawn it in light of the intervening circumstances. Sir, we know the standards. So here's... Can I cut to the chase on this so you can have a chance to answer my question? On prejudice, my concern is that when I read this record, I agree with Judge Bybee, there's a pretty articulate statement, more than one, in the record from your client, and it seemed to me that he was determined to avoid and was very concerned about the indeterminate sentence, so that that would have... That seems to me the problem you've got on prejudice. Could you speak to that point, please? I think that the best evidence I have, Your Honor, is in one of those colloquies, Mr. Kinzel was saying that he was having trouble understanding how his prior criminal history and his mental health history would impact his life sentence exposure. That means that he... Which one? This was... You want to make a note and tell me when you come back? Yes, Your Honor. I'll get it back to you. And I think that... But also, I think that what I would ask the court to focus on is that in the Lafler standards that were put out, they also look for external factors to help us on the showing of prejudice. And one of those is the disparity in sentences. One of those in Lafler, it talks about willingness to plead guilty. And there was a willingness on his behalf. He was sending mixed messages on this issue. And then the third thing is his remorse. And that was another factor that Lafler also discussed. So this idea of wanting to go to trial is a little bit at odds with the statements that he made at sentencing expressing remorse to the victim. And so in these... The reason we have put forth the evidence as to his medication issues is that we're trying to demonstrate to the court that this is not a self-serving petitioner. There were issues external to him that was impacting his ability to understand and communicate with his attorney, and his attorney ignored them. Unless the court has any additional questions, I'd like to look at the record and refer back to Your Honor's question about... He was sufficiently competent to enter one plea. How do you distinguish that fact and his degree of competence with respect to the pleas he rejected? I would say two things. One, we're not making a competency claim, Your Honor, but to answer that question, that plea offer was very straightforward. It was for 30 days. And so... But it entailed registration, did it not? Yes, Your Honor. Lifetime registration? Yes. Yes, Your Honor. He had a failure to register that, yes, he was supposed to register, and he did not register. Anything further, Judge Byrd? No. Thank you for your argument. Counsel, we'll hear from opposing counsel. May it please the court. John Sampson, Assistant Attorney General, representing the respondent appellee. The district court correctly denied relief in this case because the state supreme court adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law. In looking at the reasonableness of the state court adjudication, there are two points that the court should keep in mind. First is that the more general the rule being applied, the more leeway the states have in applying that rule to the case. And Strickland is a general rule of application. And the Supreme Court has recognized repeatedly that when a state court applies Strickland to review counsel's conduct, the state courts have a great deal of leeway in making that determination. The second point is that the case law on ineffectiveness of assistance to counsel regarding plea offers is very limited. There's Missouri v. Frye and the Lafler case. Both of those involve situations. Missouri v. Frye involved a failed to tell the defendant of a plea offer. And Lafler involved a situation where counsel gave bad advice and said reject the plea offer. The Supreme Court has never dealt with a situation where counsel gave correct advice, advised the defendant that they should accept the plea because they are going to face a greater sentence if they go to trial than if they accept the plea. And the defendant repeatedly rejects the plea offer, even in court when the offer is before him in court and he makes a rejection of the plea. The Supreme Court has never addressed that particular situation. So they've never said how you would determine prejudice in that situation. And under Glebe v. Frost, where the Supreme Court has not extended its precedent to determine the correct prejudice analysis, the state court decision cannot be contrary to or non-reasonable application of Supreme Court case law. And I would point out that counsel seems to be making two arguments regarding competency. One is he admits that he's not challenging competency, but then he's saying that defense counsel should have recognized that he was incompetent to understand his plea. But Mr. Kinzel correctly understood the sentencing consequences when he rejected the plea. He understood he would receive a sentence of about 108 months minimum term, but a life sentence if he pled guilty. And he didn't want a life sentence because in his mind that still ran a serious risk of not actually being released, which is an accurate determination. He is a repeat sex offender. He had committed attacks against adults and children, and he has shown no history of rehabilitation. So there is a serious risk at looking at the time of trial that if he received a sentence of 108 months to life, he would serve life imprisonment. So he made the choice that he did not want to accept the plea. He wanted to take the risk, go to trial, try to be acquitted of a sex offense, and therefore get a lesser offense and a lesser sentence, less than life. Counsel also talks about there being a subjective test under Strickland, and that the state Supreme Court incorrectly applied an objective rather subjective test. I'm not aware of any Supreme Court case that says that Strickland is subjective. What the Supreme Court has said is you look at, but for counsel's deficient performance, would the defendant have accepted the plea? Would the plea still be there for the defendant to accept? Would the court accept that plea? And then would the sentence be less harsh than if the defendant had proceeded to trial? And what the state Supreme Court here said, like the State Court of Appeals, was that it's too speculative to determine that but for counsel's deficient performance, Mr. Kinzel would have pled guilty. And what this is like is in tort, where you have a duty, you have a breach of that duty, you have proximate cause, and then you have an injury. There has to be a proximate cause. The counsel's deficient performance must actually cause the defendant not to accept the plea. And there's no indication other than speculation that that was the situation here. Counsel relies on the psychologist reports, Dr. Breen's report submitted to the state court. But Dr. Breen's report doesn't really say what they purported to say. It says, yes, he has a mental illness. Mr. Kinzel has a mental illness. Yes, he should be diagnosed with this and given lithium. And yes, his condition has improved since he's gotten into prison. But Dr. Breen never gives the opinion that if he had been properly treated, he would have in fact accepted the plea. In fact, he admits in his opinion that he is not competent to give an opinion on the effects in the proper medication of lithium. And then finally, I would point out that in looking at whether or not Mr. Kinzel would have accepted the plea, you cannot just take his post-conviction statement that, oh, of course I would have accepted the plea if I had been competent. You have to look at the totality of the circumstances. And in this case, his adamant insistence of going to trial because he did not want to have a life sentence showed that he would not, but for counsel's deficient performance, have accepted the plea offer. Unless the court has questions, we would ask that this court affirm the district court's judgment. It looks like we don't have any further questions. Thank you for your argument, counsel. Thank you, Your Honor. Counsel, you have a little over four minutes left on the clock. Thank you, Your Honor. To refer back to your question, at ER 45, and this is where I was told once by Ms. Trueblood, quit wasting my time, Mr. Kinzel, just take the deal. And he says the problem with taking any deal is it kind of goes off the track, but that it involves a possibility of a life sentence due to the current charges, my past criminal history, and my mental health history. I've asked her for information on this indeterminate sentencing board. The only thing she provided me, well, it's a board. It's kind of like a parole board. I asked her what their guidelines do they look at. Well, that doesn't matter. That's not relevant. I don't believe I would get fair representation. He had a difficult understanding of this process of this ISRB board and what would happen. And what we're asking for is we're asking for the, he was deprived of the opportunity of a plea offer that allowed him to get a concurrent sentence as opposed to a consecutive sentence, which would give him the ability to appear in front of the ISRB at an date rather than a later date. We're not asking the court to overturn these sentences in the context that he's not accepting responsibility. I want to go back to what counsel was talking about the subjective versus objective standard. In the context of a plea in Lafleur, the court did look to the sixth circuit, did look to the petitioner's declaration that had they gotten proper advice, they would have accepted the offer because you have to look at the individual's state of mind and representations. Under the proposed approach, respondent suggests it would be nearly impossible to overcome the prejudice standard under Lafleur because if you're not going to consider the declaration, then how else is a petitioner supposed to make such a showing? And on the issue of competency, the statute does not require, we're not making a competency claim. We're making that clear. What we're saying is that the statute provides a mechanism that if there is a reason to doubt competency, then what it does is that it forces for him to be evaluated and then enforces a mechanism which allows to get the mental health records. And in that context, what would happen here is that even if he was evaluated by Western State Hospital, which is where individuals are sent, they would say, well, he is competent, but he needs to be medicated. And so, there was a statutory mechanism to accomplish what we're saying that should have been accomplished under the circumstances by trial counsel. Ninety-seven percent, as both Missouri versus Frye and Lafleur observed, case is resolved by way of plea. Ninety-seven, ninety-five percent. There has to be, counsel has to, when a petitioner tells counsel to go look at their mental health records, defense attorney has an obligation to do that because that is what is being asked. And in this case, we believe we've made a showing that Mr. Kinzel was deprived of a plea offer that had counsel represented him effectively under the circumstances. Thank you so much for your time. Thank you both for your arguments. We'll take this case under advisement. We're going to take a 10-minute break. We'll be off record.
judges: BYBEE, CHRISTEN, Selna